## *PRELIMINARY PRINT*

## VOLUME 605 U. S. PART 2

### PAGES 443–459

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 12, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

RIVERS *v.* GUERRERO, DIRECTOR, TEXAS DE-
PARTMENT OF CRIMINAL JUSTICE, COR-
RECTIONAL INSTITUTIONS DIVISION

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

No. 23–1345.   Argued March 31, 2025—Decided June 12, 2025

Petitioner Danny Rivers was convicted in Texas state court of continuous
sexual abuse of a child and related charges.   After unsuccessfully seek-
ing direct appeal and state habeas relief, Rivers filed his first federal
habeas petition under 28 U. S. C. § 2254 in August 2017, asserting claims
of prosecutorial misconduct, ineffective assistance of counsel, and other
constitutional violations.   The District Court denied the petition in Sep-
tember 2018, and Rivers appealed to the Fifth Circuit, which granted a
certificate of appealability on his ineffective-assistance claim in July
2020.

While his appeal was pending, Rivers obtained his trial counsel's cli-
ent file, which contained a state investigator's report that he believed
was exculpatory.   After the Fifth Circuit denied his request to supple-
ment the record on appeal, Rivers filed a second § 2254 petition in the
District Court based on this newly discovered evidence.   The District
Court classified this second-in-time filing as a "second or successive"
habeas application under § 2244(b) and transferred it to the Fifth Circuit
for authorization to file.   Rivers appealed the transfer order, and the
Fifth Circuit affirmed, holding that the fact that Rivers's first petition
was still on appeal did not permit him to circumvent the requirements
for successive petitions under § 2244 as to his second filing.

*Held*: Once a district court enters its judgment with respect to a first-filed
habeas petition, a second-in-time filing qualifies as a "second or succes-
sive application" properly subject to the requirements of § 2244(b).
Pp. 450–459.

 (a) The Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA) contains several significant procedural barriers that strictly
limit a court's ability to hear "claim[s] presented" in any "second or
successive habeas corpus application." §§ 2244(b)(1), (2).   Relevant
here, § 2244 prohibits habeas applicants from filing a subsequent petition
that relitigates the merits of previously denied claims.   See
§ 2244(b)(1).   Even if the subsequent petition presents a new claim, the
second-in-time application can only proceed if it "relies on a new and
retroactive rule of constitutional law" or "alleges previously undis-

coverable facts that would establish [the petitioner's] innocence." *Banister* v. *Davis*, 590 U. S. 504, 509. In addition, a petitioner cannot bring a second or successive habeas application directly to the district court but must first go to the court of appeals and make a "prima facie showing" that the petition satisfies one of § 2244(b)(2)'s exceptions. Pp. 450–451.

(b) The Court has jurisdiction to review this dispute. Respondent contends that Rivers lacks standing because the Fifth Circuit has now affirmed the District Court's judgment denying the initial habeas petition on the merits. But because a favorable decision here would redress Rivers's alleged injury that the District Court inappropriately transferred his second habeas application to the Fifth Circuit for review under § 2244(b), Rivers has appellate standing with respect to that legal claim. Nor does the fact that Rivers is no longer in custody on the child-pornography conviction that his second habeas filing challenges defeat this Court's habeas jurisdiction, given that Rivers remains incarcerated on related sexual-abuse sentences that the newly discovered evidence may implicate. Pp. 451–452.

(c) The phrase "second or successive habeas corpus application" in § 2244(b)(2) is a "term of art" that does not refer to all habeas filings made second in time following an initial application. Whether a filing qualifies as a second or successive application generally turns on the existence of a final judgment with respect to the first petition, not the status of any appeal. An amended petition filed before judgment is not second or successive because final judgment has not issued, while a motion under Federal Rule of Civil Procedure 60(b) filed after judgment counts as a second or successive application if it attacks the court's previous resolution of a claim on the merits or seeks to add new grounds for relief.

Rivers's argument that his second filing should not trigger § 2244(b) because his appeal was pending is unpersuasive. The Court's decision in *Banister* v. *Davis*, 590 U. S. 504, does not support a rule that is based on appeal timing but rather confirms that entry of final judgment generally separates first from second or successive habeas filings. Rule 59(e) motions present a unique variant because they suspend finality and help produce a single final judgment, but Rivers's filing does not fall within this narrow category. Pp. 452–454.

(d) Purpose and history do not support Rivers's interpretation either. Section 2244(b)'s restrictions aim to conserve judicial resources, reduce piecemeal litigation, and lend finality to state-court judgments within a reasonable time. Drawing the second-or-successive line at the end of appellate review would allow petitioners to file numerous new applications during appeals, prolonging cases and encouraging piecemeal litigation. Historical habeas doctrine before AEDPA was inconsistent re-

garding treatment of new filings during pending appeals, providing no
clear guidance.   Pp. 454–457.

    (e) The Court declines to address Rivers's alternative argument that
his second filing, which he argues was a Rule 15 motion to amend, is not
a new application by its nature.   This theory was not presented in the
petition for certiorari or to the courts below and makes its first appear-
ance in the merits briefing.   Additionally, the factual predicate is lack-
ing because the District Court lacked jurisdiction to grant such a motion
while the case was on appeal, and Rivers never requested an indicative
ruling under Rule 62.1.   Pp. 457–459.

99 F. 4th 216, affirmed.

    JACKSON, J., delivered the opinion for a unanimous Court.

    *Peter A. Bruland* argued the cause for petitioner.   With
him on the briefs were *Virginia A. Seitz, Benjamin M. Mun-
del, Cody M. Akins*, and *Jacob Steinberg-Otter.*
    *Aaron L. Nielson*, Solicitor General of Texas, argued the
cause for respondent.   With him on the brief were *Ken Pax-
ton*, Attorney General, *Brent Webster*, First Assistant Attor-
ney General, *William F. Cole*, Principal Deputy Solicitor
General, *Jacob C. Beach*, Assistant Solicitor General, *Joseph
P. Corcoran*, Deputy Chief, Criminal Appeals Division, and
*Lori Brodbeck, Meagan Corser*, and *Justine Tan*, Assistant
Attorneys General.
    *Matthew Guarnieri* argued the cause for the United
States as *amicus curiae* urging affirmance.   With him on
the brief were *Acting Solicitor General Harris, Deputy So-
licitor General Feigin*, and *Antoinette T. Bacon.**

─────────

    *Briefs of *amici curiae* urging reversal were filed for Former Federal
and State Prosecutors by *Joshua D. Branson* and *Jarrod A. Nagurka*; for
Former Federal Judges by *Andrew T. Tutt* and *Dana Kagan McGinley*;
for the National Association of Federal Defenders et al. by *Jonathan Kirsh-
baum, Shelley Fite, David M. Porter, Rachel Julagay*, and *David F. Ness*;
and for Phillips Black, Inc., by *John R. Mills.*
    Briefs of *amici curiae* urging affirmance were filed for the State of
Arkansas et al. by *Tim Griffin*, Attorney General of Arkansas, *Dylan L.
Jacobs*, Interim Solicitor General, and *Asher L. Steinberg*, Senior Assistant
Solicitor General, by *Christopher M. Carr*, Attorney General of Georgia,

JUSTICE JACKSON delivered the opinion of the Court.

Incarcerated individuals who seek to challenge their imprisonment through a federal habeas petition are generally afforded one opportunity to do so. See 28 U. S. C. §§ 2254, 2244. Before a federal court can address a petitioner's second or successive federal habeas filing on the merits, the incarcerated filer must clear strict procedural hurdles that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) erects. See § 2244(b). This case presents the question of how to classify a second-in-time habeas filing when the judgment denying the first application is under review on appeal. Does that second habeas-related submission qualify as a second or successive application, thereby triggering § 2244(b)'s stringent gatekeeping requirements?

We hold that, in general, once the district court has entered its judgment with respect to the first habeas petition, a second-in-time application qualifies as "second or succes-

*Stephen J. Petrany*, Solicitor General, and *Justin T. Golart*, Deputy Solicitor General, and by the Attorneys General for their respective States as follows: *Steve Marshall* of Alabama, *James Uthmeier* of Florida, *Raúl Labrador* of Idaho, *Theodore E. Rokita* of Indiana, *Brenna Bird* of Iowa, *Kris W. Kobach* of Kansas, *Russell Coleman* of Kentucky, *Liz Murrill* of Louisiana, *Lynn Fitch* of Mississippi, *Andrew Bailey* of Missouri, *Michael T. Hilgers* of Nebraska, *Aaron D. Ford* of Nevada, *Drew H. Wrigley* of North Dakota, *Dave Yost* of Ohio, *Gentner Drummond* of Oklahoma, *Alan Wilson* of South Carolina, *Marty J. Jackley* of South Dakota, *Jonathan Skrmetti* of Tennessee, *Derek Brown* of Utah, *Jason Miyares* of Virginia, and *Patrick Morrisey* of West Virginia; for the Commonwealth of Pennsylvania et al. by *David W. Sunday, Jr.*, Attorney General of Pennsylvania, *Hugh J. Burns, Jr.*, and *Ronald Eisenberg*, Senior Deputy Attorneys General, *Kirsten E. Heine*, Executive Deputy Attorney General, *Kathleen Jennings*, Attorney General of Delaware, and *Matthew J. Platkin*, Attorney General of New Jersey; for the Criminal Justice Legal Foundation by *Kent S. Scheidegger*; and for Sen. John Cornyn by *Owen J. McGovern*.

*Igor V. Timofeyev, Stephen B. Kinnaird, Vladimir J. Semendyai*, and *Vanessa Omoroghomwan* filed a brief for Lee Kovarsky et al. as *amici curiae*.

sive" and is thus properly subject to the requirements of § 2244(b).

## I

In 2012, a Texas state-court jury convicted petitioner Danny Rivers of continuous sexual abuse of a child, two forms of indecency with a child, and possession of child pornography. Rivers unsuccessfully sought direct appeal and state habeas relief.

In August 2017, Rivers filed his first federal habeas petition under 28 U. S. C. § 2254, a statute that permits a federal court to evaluate a state prisoner's claim "that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). In that habeas petition, Rivers asserted, *inter alia*, claims of prosecutorial misconduct, ineffective assistance of trial and appellate counsel, and due process and equal protection violations.

The District Court denied Rivers's habeas petition, issuing its judgment in September 2018. Rivers then invoked the procedure that AEDPA prescribes for seeking to challenge a § 2254 habeas denial in the court of appeals: He asked the Fifth Circuit to give him what is known as a "certificate of appealability."[1] A Fifth Circuit Judge granted Rivers's request in July 2020, but only as to his claim for ineffective assistance of counsel.

While his appeal was pending, Rivers gained access to his own client file, which had been in his trial counsel's possession. The file contained a state investigator's report that discussed two computer documents Rivers believed were re-

---

[1] Individuals seeking to appeal the denial of a § 2254 habeas petition must receive permission to do so by obtaining such a certificate. See § 2253(c)(1)(A) ("[A]n appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" "[u]nless a circuit justice or judge issues a certificate of appealability"). A certificate of appealability can issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).

lated to his convictions; one document was labeled "of interest," while the other was specifically described as "not child porn." App. 94 (capitalization deleted). Rivers promptly requested to supplement the Fifth Circuit's case record with this purportedly exculpatory information, but the Fifth Circuit denied that request. Rivers then asked the appellate panel to either stay the appeal or remand the case to the District Court to allow him to present this new evidence to the lower court in the first instance. See *id.*, at 99 (arguing that "justice and judicial economy would best be served" if a single court considered "all grounds" for relief (capitalization deleted)). The Fifth Circuit rejected the stay-or-remand request as well and, thereafter, affirmed the District Court's denial of Rivers's § 2254 petition on the merits. This Court denied certiorari. See *Rivers* v. *Lumpkin*, 598 U. S. 1234 (2023).

Notably for present purposes, after the Fifth Circuit denied Rivers's request to supplement the record, Rivers filed another § 2254 petition with the District Court. This petition included the newly obtained state investigator's report and raised claims for relief related to that evidence. A Magistrate Judge recommended that this second-in-time habeas petition be classified as a "second or successive" habeas application for § 2244(b) purposes. Rivers objected, arguing that his second § 2254 filing should not be construed as a new habeas application. Rather, Rivers asserted, the new filing should be treated as an amendment to his initial habeas petition, because the judgment related to that first petition was still on appeal.

The District Court rejected Rivers's argument. It concluded that the second-in-time filing was a second or successive habeas petition subject to § 2244(b)(2) and transferred the filing to the Fifth Circuit for a determination whether § 2244(b)(2)'s gatekeeping requirements for second or successive habeas petitions had been satisfied. See Part II, *infra*. Rivers then appealed the District Court's transfer order,

again insisting that his filing was not a second or successive habeas petition (as opposed to a motion to amend) "because his first-in-time petition was still pending on appeal." *Rivers* v. *Lumpkin*, 99 F. 4th 216, 218 (CA5 2024).

The Fifth Circuit affirmed. In its view, "the timing of Rivers's second-in-time petition d[id] not permit him to circumvent the requirements for filing successive petitions under §2244." *Id.*, at 221. The panel reasoned that the District Court could have treated the second-in-time filing as a request to amend under Federal Rule of Civil Procedure 15 if the judgment relating to Rivers's first petition had been vacated on appeal and the case reopened in the District Court. *Ibid.* But because the judgment as to the first petition had not been so vacated, "Rivers's second-in-time habeas petition" was a "second or successive" petition that was "subject to the district court's transfer order for lack of jurisdiction absent authorization to file." *Id.*, at 223.

The Fifth Circuit's decision entrenched a Circuit split over how to characterize a second-in-time habeas filing that is filed when an appeal of the judgment of the first habeas filing is pending.[2] Is the second filing a "second or successive" habeas petition for §2244 purposes, or not? We granted certiorari to resolve that split. 604 U. S. 1041 (2024).

---

[2] The majority of Circuits to consider the issue have concluded that §2244(b) applies to a second-in-time habeas filing as of the district court's entry of final judgment related to the first application, regardless of the status of any appeal. See, *e. g.*, *Balbuena* v. *Sullivan*, 980 F. 3d 619, 641–642 (CA9 2020); *Phillips* v. *United States*, 668 F. 3d 433, 435–436 (CA7 2012); *Ochoa* v. *Sirmons*, 485 F. 3d 538, 540–541 (CA10 2007) (*per curiam*); *Williams* v. *Norris*, 461 F. 3d 999, 1003–1004 (CA8 2006). The Second Circuit, by contrast, has held that "so long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does *not* come within AEDPA's gatekeeping provisions for 'second or successive' petitions." *Whab* v. *United States*, 408 F. 3d 116, 118 (2005) (emphasis added); see also *United States* v. *Santarelli*, 929 F. 3d 95, 105 (CA3 2019) ("join[ing] the Second Circuit").

II

Habeas petitioners are generally entitled to "one fair opportunity" to litigate the merits of their postconviction claims in federal court. *Banister* v. *Davis*, 590 U. S. 504, 507 (2020); see also *Slack* v. *McDaniel*, 529 U. S. 473, 485–486 (2000); *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 643 (1998). When a person seeks to bring a subsequent federal habeas challenge to his detention, "the road gets rockier." *Banister*, 590 U. S., at 509. AEDPA contains several significant procedural barriers that strictly limit a court's ability to hear "claim[s] presented" in any "second or successive habeas corpus application." §§ 2244(b)(1), (2).

Several of those barriers are relevant to the issue presented in this case. First, § 2244 prohibits habeas applicants from filing a subsequent petition that relitigates the merits of previously denied claims. See § 2244(b)(1) (stating that any claim that "was presented in a prior application shall be dismissed"). Second, even if the subsequent petition presents a new claim, the second-in-time application can only proceed if it "falls within one of two narrow categories": The claim must "rel[y] on a new and retroactive rule of constitutional law" or "alleg[e] previously undiscoverable facts that would establish [the petitioner's] innocence." *Banister*, 590 U. S., at 509; see also § 2244(b)(2). Additionally, a petitioner cannot bring a second or successive habeas application directly to the district court. Instead, he must first go to the court of appeals and make a "prima facie showing" that the petition satisfies one of § 2244(b)(2)'s exceptions, and *that* court has to grant authorization for the petitioner to proceed in district court. § 2244(b)(3). And then, even when such leave is granted, the district court must independently confirm that the petition satisfies the requirements of § 2244(b)(2). See § 2244(b)(4).

These rules apply to second-in-time habeas filings even if the filing is not styled as a § 2254 habeas application by the

filer—so long as the document is a §2254 petition in substance. For example, a self-styled "motion" that "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim on the merits" can be construed as a second or successive petition and forced to face the gauntlet of §2244(b), no matter how it is labeled. *Gonzalez* v. *Crosby,* 545 U. S. 524, 532 (2005) (emphasis deleted).

### III

Respondent presents two arguments for why we lack jurisdiction over today's dispute about how Rivers's second-in-time habeas filing should be characterized: first, that Rivers lacks standing because his injury is not redressable; and second, that the Court lacks habeas jurisdiction because Rivers's child-pornography sentence has expired. For his part, Rivers makes two alternative arguments about the merits. He maintains that the second-in-time habeas petition does not trigger the second-or-successive requirements of §2244(b) because his appeal of the first petition was pending when he filed the second one. Alternatively, he argues that his second-in-time filing should be construed as a motion to amend—and, so construed, does not qualify as an "application" to which §2244(b)'s requirements apply.

### A

We begin our analysis by quickly disposing of respondent's contention that we lack jurisdiction. Respondent first insists that Rivers lacks standing because the Fifth Circuit has now affirmed the District Court's judgment denying the initial habeas petition on the merits, and this Court lacks the authority to reopen that judgment in this separate litigation. But a favorable decision from this Court would redress Rivers's alleged injury—namely, that the District Court inappropriately transferred his second-in-time habeas application to the Fifth Circuit for review under §2244(b). Rivers

therefore has appellate standing with respect to that legal claim. See *Food Marketing Institute* v. *Argus Leader Media*, 588 U. S. 427, 433 (2019).

Respondent is also mistaken regarding the contention that the Court lacks habeas jurisdiction because Rivers is no longer in custody on the child-pornography conviction that the second habeas filing challenges. See §2254(a) (permitting an application from an individual "in custody"). The record establishes that the newly discovered evidence Rivers wants the federal courts to consider implicates the sexual-abuse sentences for which Rivers remains incarcerated, too. Thus, we retain habeas jurisdiction to review his claims.

## B

### 1

Turning to the parties' merits arguments concerning Rivers's second-in-time habeas filing, we note, to start, that the phrase "second or successive . . . application" as it appears in §2244(b)(2) is a "term of art"—that is, it does not necessarily "'refer' to all habeas filings made 'second or successively in time,' following an initial application." *Banister*, 590 U. S., at 511 (quoting *Magwood* v. *Patterson*, 561 U. S. 320, 332 (2010)). Instead, the second-or-successive moniker applies only to "claim[s]" that have been presented in subsequently filed "applications." §2244(b)(2). A "claim," as that term is used in §2244(b), is "an asserted federal basis for relief" from the judgment of conviction. *Gonzalez*, 545 U. S., at 530. And an "application" is "a filing that seeks 'an adjudication'" of one of those claims "'on the merits.'" *Ibid.* (quoting *Woodford* v. *Garceau*, 538 U. S. 202, 207 (2003); emphasis deleted); see also *Gonzalez*, 545 U. S., at 533 (explaining that motions that do not "substantively addres[s] federal grounds for setting aside the movant's state conviction," for example, are not subject to the second-or-successive bar).

Rivers acknowledges that his second-in-time filing "raised several new claims" that he had not presented previously to

the District Court. Pet. for Cert. 12. Still, in his petition for certiorari—and, to a lesser extent, his merits brief—Rivers argues that this filing did not qualify as a second or successive application triggering §2244(b) because it was submitted during the pendency of his appeal of the judgment related to his first habeas petition. *Id.*, at 24; Brief for Petitioner 37. We do not agree with that proposition. Our case law establishes instead that whether a filing qualifies as a second or successive application generally turns on the existence of a final judgment with respect to the first petition, not the status of an appeal.

We have noted, for example, that "an amended petition, filed after the initial one but *before* judgment, is not second or successive" for §2244(b) purposes precisely because final judgment has not issued. *Banister*, 590 U. S., at 512 (emphasis added). On the other hand, we have determined that a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) (filed, obviously, after the judgment has issued) counts as a second or successive application if that filing "attacks the federal court's previous resolution of a claim on the merits" or "seeks to add a new ground for relief" not addressed by the judgment. *Gonzalez*, 545 U. S., at 532 (emphasis deleted).

Pointing to *Banister*, Rivers insists that this Court has already rejected a moment-of-judgment rule for distinguishing between second-in-time filings that qualify as second or successive applications and those that do not. But our ruling in *Banister* related to a materially different filing submitted in a materially different context. There, the Court considered whether a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)—*i.e.*, a motion filed within 28 days that seeks to correct an error in the District Court's judgment prior to an appeal—should be construed as a second or successive filing under §2244(b). 590 U. S., at 511. To be sure, the respondent in that case had "urged this Court to hold that '[e]ntry of final judgment is

the dividing line between a first and second application,'" as Rivers notes. Brief for Petitioner 37 (quoting Brief for Respondent in *Banister* v. *Davis*, O. T. 2019, No. 18–6943, p. 18; alteration in original). But Rule 59(e) motions present a unique variant to the otherwise generally applicable rule that entry of final judgment separates first from second or successive habeas filings.

Specifically, unlike a Rule 60(b) motion for relief from judgment, which seeks to challenge an extant judgment, a successful Rule 59(e) motion merely "suspends finality" of the original judgment so that the district court can "fix any mistakes and thereby perfect its judgment before a possible appeal." *Banister*, 590 U. S., at 516. A Rule 59(e) motion is "a limited continuation of the original proceeding—indeed, a part of producing the final judgment granting or denying habeas relief." *Id.*, at 521. As a result, disposition on a Rule 59(e) motion "merges into the final judgment" of the initial habeas filing. *Id.*, at 516.

In other words, Rule 59(e) motions are "attendant on the initial habeas application" itself and "hel[p] produce a single final judgment for appeal." *Id.*, at 515–516. Thus, they are not themselves properly considered to be second or successive filings under AEDPA. *Id.*, at 517; see also *id.*, at 518–520 (contrasting this with second-in-time filings that "collaterally attack [the District Court's] already completed judgment" and from which appeal is "independent of the appeal of the original petition"). When properly understood, then, our decision in *Banister* actually supports the rule that Rivers resists.

2

Rivers also maintains that it undermines the purposes of AEDPA, and diverges from historical habeas doctrine and practice, to conclude that second-in-time applications filed during the pendency of an appeal trigger § 2244(b). See *id.*, at 512–513 (explaining that these factors are relevant to the second-or-successive inquiry). But purpose and history do

not push us in the direction of adopting Rivers's preferred interpretation either.

As we have said before, "[t]he point of §2244(b)'s [gate-keeping] restrictions . . . is to conserve judicial resources, reduce piecemeal litigation, and lend finality to state court judgments within a reasonable time." *Id.*, at 512 (internal quotation marks and alterations omitted). Rivers argues that his interpretation advances these aims by, for example, steering new claims to district courts, which have the "tools and experience that appellate courts lack" to terminate suits and thereby "haste[n] finality." Brief for Petitioner 34 (capitalization and boldface deleted). But the reality is quite the opposite. If the second-or-successive line is drawn at the end of the appellate-review period, a petitioner could file any number of new applications raising new claims during the pendency of appeal or certiorari review, thereby prolonging the case seemingly indefinitely. So, as a practical matter and in the mine-run case, Rivers's theory would promote inefficiency by encouraging piecemeal litigation, and would thus make it substantially more difficult to "produce a single final judgment for appeal." *Banister*, 590 U. S., at 516.

Rivers tries to bolster his congressional-intent-related arguments by pointing to other postconviction provisions that pin "finality" to the end of appellate review, not to the entry of judgment. See, *e.g.*, §2244(d)(1)(A) (running the 1-year deadline to file a §2254 petition from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"). We note, however, that these provisions are buoyed by different animating purposes. The 1-year deadline for filing a §2254 petition, for example, promotes exhaustion of claims and respects state-court processes, whereas AEDPA's second-or-successive restrictions "constitute a modified res judicata rule," *Felker* v. *Turpin*, 518 U. S. 651, 664 (1996), that "balance[s] . . . finality and error correction," *Jones* v. *Hendrix*, 599 U. S. 465, 491 (2023). "It is thus hardly 'strange' that

rules governing exhaustion and the statute of limitations for purposes of bringing an *initial* application differ from those governing a *successive* application." Brief for Respondent 38. With AEDPA's second-or-successive bar, Congress chose to promote finality by requiring authorization from the court of appeals to file successive petitions; the question before us today is merely when that requirement kicks in.

Rivers's appeal to historical habeas doctrine fares no better because, prior to AEDPA, there was no clear or consistent practice regarding how new habeas-related filings were treated during the pendency of an appeal. Some courts would consider new habeas filings on the merits, and deny them, when the first-in-time habeas petition was under appellate review.[3] But others would dismiss such filings without reaching the merits, on the ground that they were second or successive petitions not subject to review.[4] It is difficult to know what to make of these inconsistent practices, especially when Rivers fails to point to any case in which a court actually *granted* habeas relief on a subsequent petition while the first was on appeal. The historical picture is thus far too murky to be dispositive. Cf. *Banister*, 590 U. S., at 514–515 (relying on historical case law that indicated an overwhelming consensus in favor of the petitioner's view). As such, Rivers's history and policy arguments do not move the needle in our analysis.

In short, we reject Rivers's focus on the timing of his successive filing relative to the pendency of his appeal, and we conclude instead that it is the final judgment related to the

---

[3] See, *e. g.*, *Giarratano* v. *Procunier*, 891 F. 2d 483, 485–487 (CA4 1989) (affirming the denial of a mid-appeal Rule 60(b) motion on the merits); *Schewchun* v. *Edwards*, 1987 WL 36402, \*1–\*2 (CA6, Feb. 19, 1987) (same).

[4] See, *e. g.*, *Behringer* v. *Johnson*, 75 F. 3d 189, 189–190 (CA5 1996) (*per curiam*) (affirming denial of a Rule 60(b) motion containing new claims filed while the first petition was pending on appeal as a successive habeas petition); *Hunt* v. *Nuth*, 57 F. 3d 1327, 1331, 1338–1339 (CA4 1995) (same).

initial habeas filing that matters. Once the judgment has been entered with respect to the initial habeas petition, a second-in-time filing that makes new habeas claims generally qualifies as a second or successive petition for §2244(b) purposes.[5]

## IV

Rivers's petition for certiorari posited the question we've answered above. See Pet. for Cert. 1 (asking "whether 28 U. S. C. §2244(b)(2)'s rules for 'second or successive' habeas petitions apply to a habeas filing made *after* the district court has denied an initial petition but *before* an appellate court has weighed in").[6] But Rivers's merits briefing pivots to articulate an additional theory, in the alternative: that second-in-time filings that request amendment of the initial habeas petition under Rule 15 of the Federal Rules of Civil Procedure do not—by their nature—qualify as second or successive filings under §2244(b). See Brief for Petitioner 23 ("[A]n 'amendment' is not a new and independent application, but rather something that happens to an existing application"); see also *id.*, at 31 (describing Rule 15 motions as "part and parcel of the initial application" (boldface deleted)). We decline to address this argument today for two reasons.

First, Rivers failed to present this argument in his petition for certiorari or to the courts below. This new theory for

---

[5] Although we hold today that an application is second or successive under §2244(b) if a judgment on the merits has issued as to a first-in-time petition even if the case remains pending on appeal, we neither decide nor comment on whether the classification of a second-in-time petition must occur while the appeal is pending. That is, we take no position on whether, in a case where the facts support doing so, a subsequent filing can be held in abeyance until the first-in-time appeal has concluded, as is the common practice in some Circuits. See, *e.g.*, *Santarelli*, 929 F. 3d, at 105–106.

[6] See also Pet. for Cert. 2 (claiming that "[t]he Fifth Circuit's decision deepen[ed] a circuit conflict over when §2244(b)(2) kicks in"); *id.*, at 24 ("Section 2244(b)(2) does not apply until appellate review of the first habeas application is exhausted" (boldface deleted)).

why his successive filing does not trigger § 2244(b) does not operate on the timing of the filing (*i.e.*, whether, when an appeal is pending, the filing is "second or successive"), but, rather, on its nature (*i.e.*, whether, when submitted under Rule 15, the filing counts as an "application" at all). Rivers did not cite § 2242—the source of authority upon which he relies for this alternative argument—until his opening merits brief in this Court. We have often said that "'[w]e are a Court of review, not of first view.'" *Moody* v. *NetChoice, LLC*, 603 U. S. 707, 726 (2024) (quoting *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005)). Rivers's alternative argument thus "suffers from the legally fatal problem that it makes its first appearance here in this Court in the briefs on the merits." *Ohio Forestry Assn., Inc.* v. *Sierra Club*, 523 U. S. 726, 738 (1998).

Second, and in any event, we note that the factual predicate necessary for Rivers's Rule 15 argument to help him in this case is lacking. The District Court could not have granted Rivers's Rule 15 motion to amend (assuming, *arguendo*, that we treat his second-in-time filing as such) while his habeas claims were being considered on appeal, since jurisdiction had shifted to the Court of Appeals. See *Coinbase, Inc.* v. *Bielski*, 599 U. S. 736, 740 (2023). Recognizing this, Rivers asserts that the District Court could have issued an indicative ruling on this motion under Rule 62.1, which, in turn, might have persuaded the Fifth Circuit to remand the case to the District Court for consideration of the amendment. But there is one more missing piece (and it is crucial): Rivers never *asked* the District Court in this case for such an indicative ruling. Nor does he argue that the District Court abused its discretion by failing to issue one *sua sponte*. Meanwhile, the Fifth Circuit considered—and denied—the actual remand motion that Rivers filed with that court; he asked the Circuit to send the matter back to the District Court for consideration of the newly discovered

evidence, and we now lack jurisdiction to review its refusal to do so.[7]

Thus, even if Rivers's filing in the District Court could have been construed as a Rule 15 motion to amend, the District Court was powerless to grant it while his case was on appeal, and the Fifth Circuit had no proclivity to remand the matter to the District Court in any event.   This means that Rivers's alternative theory is of no use to him, and, as such, we decline to address it.

*          *          *

A second-in-time §2254 petition generally qualifies as a second or successive application, triggering the requirements of §2244(b), when an earlier filed petition has been decided on the merits and a judgment exists.   Because the Fifth Circuit correctly applied this straightforward rule, we affirm.

*It is so ordered.*

_____

[7] That Fifth Circuit ruling was associated with Rivers's first habeas petition and is memorialized in a separate docket than the case which is now on appeal.   See App. 9–12.   We denied certiorari on April 3, 2023.   See *Rivers* v. *Lumpkin*, 598 U. S. 1234.

## REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication
and citation style of the United States Reports. The revised pagination
makes available the official United States Reports citation in advance of
publication. The syllabus has been prepared by the Reporter of Decisions
for the convenience of the reader and constitutes no part of the opinion of
the Court. A list of counsel who argued or filed briefs in this case, and
who were members of the bar of this Court at the time this case was
argued, has been inserted following the syllabus. Other revisions may
include adjustments to formatting, captions, citation form, and any errant
punctuation. The following additional edits were made:

p. 453, line 16 from bottom: "the" is changed to "a"